UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MAXIMILIANO SILEONI,<br><br>                 Plaintiff,<br><br>   v.<br><br>ASHLEY HAMMON, et al.,<br><br>              Defendants. | Case No. 1:22-cv-00130-DCN<br><br>**INITIAL REVIEW ORDER BY SCREENING JUDGE** |

The Clerk of Court conditionally filed Plaintiff Maximillian Sileoni's Complaint because of his status as a prisoner and his request to proceed in forma pauperis. Dkts. 6, 2. Because of Plaintiff's status as a prisoner requesting authorization to proceed in forma pauperis and his status as a litigant with three strikes, the Court must review the Complaint to determine whether Plaintiff can proceed with or without payment of the filing fee. *See* 28 U.S.C. §§ 1915, 1915A, & 1915(g).

**REVIEW OF COMPLAINT**

**1.  Plaintiff's Allegations**

In the present action, Plaintiff alleges that 88 different IDOC employees and medical care providers harassed him when each of them wrote an institutional report stating either that he exposed his penis to them or that someone told them that they had seen his penis. Dkt. 2.

Plaintiff alleges that he suffered the following damages as a result of these reports: he was denied parole, he has spent the last 12 years in segregation, he lost the opportunity

to program and live in general population, he has been charged with various disciplinary offenses, he cannot get medical or mental health treatment, and he is verbally harassed by IDOC employees every day. *Id.*

## 2.  Standard of Law Governing Screening of Prisoner Pleadings

Under modern pleading standards, Federal Rule of Civil Procedure 8 requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This "facial plausibility" standard is met when a complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). In addition, under the Prison Litigation Reform Act (PLRA)[1], the Court must dismiss any claims that are frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

The Court liberally construes a plaintiff's pleadings to determine whether the case should be dismissed for lack of a cognizable legal theory or a failure to plead sufficient facts to support a cognizable legal theory, under the *Iqbal*/*Twombly* standard. To state a claim under 42 U.S.C. § 1983, the civil rights statute, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418,

---

[1] Pub. L. No. 104-134, 110 Stat. 1321, *as amended*, 42 U.S.C. § 1997e, *et seq.*

1420 (9th Cir. 1991).

Inmates have an Eighth Amendment right to be free from "calculated harassment unrelated to prison needs." *Hudson v. Palmer*, 468 U.S. 517, 530 (1984). A complaint for calculated harassment must state sufficient facts to show a pattern of calculated harassment, which means multiple incidents of harassment. *See id.* In the medical context, the Eighth Amendment guarantees that prisoners have access to a minimal level of medical and mental health care and protects against prison officials' intentional interference with a prisoner's medical or mental health care. *Estelle v. Gamble*, 429 U.S. 97, 104-105 (1976).

Another legal issue applicable to the Court's screening is Plaintiff's status as a "three strikes" litigant. To address the growing trend of frivolous civil rights actions filed by prison inmates, the PLRA introduced a "three strikes" provision, which precludes a prisoner from filing lawsuits or appeals in forma pauperis if he has previously filed three other actions in federal court that were dismissed on the grounds of frivolousness, maliciousness, or failure to state a claim upon which relief can be granted. *See* 28 U.S.C. § 1915(g).

The only exception is that a prisoner with three strikes may be permitted to file an in forma pauperis action if he appears to be "under imminent danger of serious physical injury." *Id*. If he is not in such danger, then he must pay the $402 filing fee at the time of filing.

For screening purposes, in cases where more factual information is needed to determine plausibility or imminent danger, but that information may be in the hands of prison officials, the Court has authority to seek additional information from the parties

INITIAL REVIEW ORDER BY SCREENING JUDGE - 3

process by exercising its discretion to request a *Martinez* report.[6] This screening tool can flesh out the facts underlying a complaint that otherwise does not meet Rule 8 and PLRA pleading standards to permit it to proceed, or can help the Court discern reasons why a plaintiff was not been able to, and could not by amendment, state a claim that would survive screening.

### 3. Plaintiff's Three Strikes History

Plaintiff's case history shows that, prior to the earliest date he could have placed the Complaint into the hands of prison officials for filing (March 24, 2022—mailbox rule), he brought three civil actions that were dismissed for failure to state a claim or frivolousness. As a result, he is subject to the three strikes rule under 28 U.S.C. § 1915(g).

Plaintiff's prior cases that fit within the § 1915(g) prohibition are as follows:

1) Case No. 20-cv-00500-DCN, *Sileoni v. State of Idaho*, was dismissed as frivolous on December 7, 2020. Dkt. 7.

2) The appeal from dismissal of Case No. 20-cv-00500-DCN was also determined to be frivolous and is counted separately. Dkt. 15.

3) Case No. 20-cv-00501-BLW, *Sileoni v. ISCI Paralegal*, was dismissed for failure to state a claim on April 20, 2021. Dkt. 9.

4) Case No. 20-cv-00502-DCN, *Sileoni v. Thomson*, was dismissed for failure to

---

[6] In *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978), the trial court ordered (before answer) that the prison officials conduct an investigation of the incident to include an interrogation of those concerned, and file a report with the court, to enable the court to decide the jurisdictional issues and make a determination under section 1915(a). *Id.* at 319. The Ninth Circuit approved of the use of *Martinez* reports in *In re Arizona*, 528 F.3d 652, 659 (9th Cir. 2008).

state a claim on June 3, 2021. Dkt. 18.

5) Case No. 20-cv-00508-BLW, *Sileoni v. IDOC Staff*, was dismissed as frivolous on January 1, 2021. Dkt. 15.

**4.  Discussion**

Because Plaintiff has three strikes, the Court focuses only on the Complaint's allegations that might show that Plaintiff is in imminent danger of serious bodily harm so that he might meet the three strikes exception to be able to proceed in forma pauperis. Plaintiff alleges, in bare fashion, a causal connection between the reports of exhibitionism and the denial of medical and mental health treatment. This allegation has the potential of meeting the three strikes exception, but the causal connection is tenuous.

Because the Court needs more information for screening to determine whether there is a lack of medical and mental health records to show a plausible factual basis for Plaintiff's allegations, the Court would normally request that Defendants file a Martinez report. However, because IDOC Defendants have already filed a Martinez report in another of Plaintiff's cases that is in the same procedural posture and that addresses some of the same factual issues, the Court will review and refer to that Martinez report in its evaluation of whether Plaintiff has met the exception to the three strikes rule here. *See Sileoni v. Richardson, et al.*, Case 1:22-cv-00150-CWD, Dkt. 7 (Case 150). Plaintiff was given an opportunity to respond to the report, declarations of IDOC officials, prison records, and mental health/medical records in that case. *See* Case 150, Dkt. 6, p. 5. Plaintiff did not file a response. *See* Docket report in Case 150.

The Martinez report in Case 150 was filed on November 14, 2022. Thus, it covers

the time period relevant to the imminent danger allegation in this case—March 2022 and after.

Warden Timothy Richardson provided the following table of Plaintiff's pertinent Disciplinary Offense Reports (DORs) since January 2020:

| Date | Offense | Offense Class |
|------|---------|---------------|
| 8/15/22 | FALSE STATEMENT 1 | B |
| 7/18/22 | SEXUAL HARASSMENT - ON STAFF | B |
| 7/16/22 | POSSESSION OF DRUGS AND/OR ALCOHOL (SECURE FACILITY) | A |
| 7/10/22 | SEXUAL HARASSMENT - ON STAFF | B |
| 6/27/22 | POSSESSION OF WEAPON | A |
| 6/26/22 | POSSESSION OF WEAPON | A |
| 6/19/22 | SEXUAL HARASSMENT - ON STAFF | B |
| 5/20/22 | POSSESSION OF DRUGS AND/OR ALCOHOL (SECURE FACILITY) | A |
| 3/9/22 | POSSESSION OF WEAPON | A |
| 7/29/21 | SEXUAL HARASSMENT - ON STAFF | B |
| 3/4/21 | HARASSMENT | B |
| 2/23/21 | SEXUAL HARASSMENT - ON STAFF | B |
| 9/21/20 | SEXUAL ABUSE 2 | A |
| 8/9/20 | SEXUAL HARASSMENT - ON STAFF | B |
| 8/4/20 | FALSE STATEMENT 1 | B |
| 6/24/20 | TAMPERING WITH A LOCK, SAFETY, OR SECURITY DEVICE | B |
| 6/18/20 | TAMPERING WITH A LOCK, SAFETY, OR SECURITY DEVICE | B |
| 5/19/20 | DISOBEDIENCE TO ORDERS 2 | B |
| 5/14/20 | POSSESSION OF DRUGS AND/OR ALCOHOL (SECURE FACILITY) | A |

Warden Richardson summarized Plaintiff's 89 DORs between December 2011 and November 2021 as including 13 for sexual harassment of staff and 29 that are "related to something of a sexual nature (indecent exposure, sexual activity, sexual harassment)." Case 150, Dkt. 7-3, pp. 5-6.

For plausibility determination purposes, the Court notes that Plaintiff has a history of filing claims of a sexual nature in this court. In Case No. 1:20-cv-00508-BLW, *Sileoni*

*v. IDOC Staff and P.C. Prisoners* (Case 508), Judge Winmill determined that Plaintiff's

sexually-based claims were frivolous, given the repetitive allegations that 36 different

prison employees and medical staff were engaging in sexual behavior with Plaintiff. Judge

Winmill observed:

> Plaintiff is a prisoner in the custody of the Idaho Department of Correction (IDOC), incarcerated at Idaho Maximum Security Institution (IMSI). He self-reports that he has been diagnosed with depression, manic bipolar disorder, anxiety, schizophrenia, psychosis, obsessive compulsive disorder, and, especially relevant here, exhibitionist disorder. He complains that he is constantly demeaned and harassed by prison and medical professionals because he is Hispanic, a sex offender, and a sufferer of exhibitionist disorder.

> For background purposes only and not for the purpose of screening Plaintiff's mental health treatment claims (which are being severed into a different lawsuit), the Court includes the following allegations about Plaintiff's mental health treatment. Dr. Khatain, the prison psychiatrist, allegedly failed to treat Plaintiff for exhibitionist symptoms and prescribed medications that did not help him. Plaintiff asserts he was wrongfully confined instead of treated for exhibitionist disorder. [In Plaintiff's own words,] Dr. Khatain allegedly:

>> failed "to train correctional staff to deal with him due to his mental illness of being sexually attracted to older woman's, that cause me to exhibit myself to them because in my mind I believe that they would get with me, in a sexual encounter and give me love and show me compassion and care for my body like a mother would to her newborn child.

Case 508, Dkt. 3, p. 21. Plaintiff similarly admits that he has an exhibitionist disorder in

Case No. 21-cv-000009-BLW (Case 9). *See* Complaint, Dkt. 1, in Case 9.

In addition, in Case No. 1:21-cv-00409-BLW, *Carr v. Tewalt* (Case 409), Plaintiff

wrote an affidavit in which he stated:

> [W]hile in the hole [segregation] (A-block) at ISCC, June/July 2019 with [prisoner Jody] Carr our Unit Sgt. Borg, a beautiful woman that knew I liked her told me we would have some alone time and just one on one if I would say the papers Carr and I were fighing [sic] said he wanted me to lie about this dude named Davis that, I did not lie about Carr, but she asked to see my penis, I showed it to her and she wrote me up for it.
>
> I have a large penis and female staff tell each other and some ask me to see it I show them and if they think someone will tell on them for it, they write me DORs.

Dkt. 5-5, p. 3, in Case 409.

Turning to the Martinez report from Case 150 to determine whether there is any plausible evidence showing that, after March 2022, Plaintiff has been denied medical and mental health care as a result of staff reports of prison conduct violations of a sexual nature, the Court finds that the Martinez report contains a section titled "Sufficiency of Sileoni's Medical and Mental Care":

> Mr. Sileoni has not been entirely cooperative with the mental health professionals that tried to aid him. He has been evaluated by licensed clinicians as having a "diagnosable mental disorder," but requiring intervention or monitoring only at the "lowest level." Declaration of Walter Campbell, ¶ 5. Prior to this current designation on April 16, 2019, Mr. Sileoni qualified for a mental health status that indicated "no diagnosable mental health disorder." Id. at ¶ 6.
>
> More significantly, neither security nor medical staff have documented Mr. Sileoni ever having complained of medical or mental health concerns. Id. at ¶¶ 9-11, and Declaration of Timothy Richardson, Exhibit E. He receives visits by security staff every 30 minutes, visits from a shift commander at least daily, and visits from medical staff several

INITIAL REVIEW ORDER BY SCREENING JUDGE - 8

times weekly. During none of these visits has Sileoni complained of being 'mentally sick of being in a single cell.'

Sileoni has filed at least 110 Health Service Requests since January 1, 2021, demonstrating that he clearly knows how to ask for help when he needs it. Declaration of Walter Campbell, ¶ 14. On or about March 6, 2020, IDOC Chief Psychologist Wally Campbell noted that Sileoni was not participating in in his mental health treatment. *Id.* at ¶ 15, and Declaration of Timothy Richardson, Exhibit D, p. 1. As of February 3, 2021, it appears Sileoni was still refusing mental health treatment and ongoing assessment. When visiting face-to-face with clinical staff on August 3, 2022, Sileoni reported that he "was fine at this time," and on August 25, 2022, he presented to the clinician normal, compliant, and unremarkable. Declaration of Walter Campbell, Exhibit A, pp. 1, 7-9, 12.

The records show that "Mr. Sileoni is responsive to his routine visits, greets the clinician appropriately," (Id. at ¶ 11) and yet apparently only complains of mental health concerns through Grievance Forms or in this lawsuit – but never to any of the staff members who could respond. His grievances seem directed at being transferred to the Acute Mental Health Unit at ISCI, but both because his classification as a close-custody resident prevents him from being housed there, and because his mental health level of care do not warrant such intense psychotherapeutic interventions, IDOC cannot accommodate him in the way that he requested. Declaration of Timothy Richardson, ¶ 3. Nonetheless, Sileoni has not complained that any of the mental health guidelines specific to mental health observation and intervention while in restrictive housing are not being followed.

Sileoni has not shown that any named Defendant has shown deliberate indifference to his medical condition. Nor has he shown that the conditions of his incarceration posed a substantial risk of serious harm.

Case 150, Dkt. 7, pp. 11-12.

To support the IDOC officials' response, they have submitted numerous medical

and mental health records of Plaintiff. See Case 150, Dkt. 7-2. A psychiatric assessment note shows that Plaintiff's psychiatric medications were checked and he was offered changes of dosages and/or medications on  January 13, 2022, April 7, 2022, July 7, 2022, July 28, 2022, and August 25, 2022. *Id*., p. 19. He received prescriptions from the pharmacy on May16, 2022, and July 28, 2022. Id., p. 20. He had medical lab work done on August 29, 2022. *Id*.

Plaintiff has not alleged that he has any particular serious medical condition for which he is not receiving treatment. The Court notes that Plaintiff has filed two Complaints seeking an injunction requiring prison officials to provide him with circumcision surgery, both of which show that Plaintiff has been regularly evaluated by medical providers when he seeks treatment (regardless of whether Plaintiff agrees with the outcome of the evaluation). See Cases 1:21-00242-DCN, *Sileoni v. Timpiermas, et al*., Dkt. 3, pp. 23-28; and 1:22-cv-00008-DCN, *Sileoni v. Timmerman*s, *et al*., Dkt. 3-2, pp. 1-6.

Based on everything the Court has reviewed to screen Plaintiff's Complaint, the Court concludes that Plaintiff cannot plausibly allege that he receives no mental health or medical care in the prison. There is no imminent danger of serious physical injury evident in the allegations contained in Plaintiff's Complaint. Therefore, he cannot meet the three strikes exception. The Complaint is subject to dismissal unless Plaintiff comes forward to pay the filing fee of $402 to proceed. If he does not, this case will be dismissed without prejudice.

## ORDER

**IT IS ORDERED** that Plaintiff's Application to Proceed in Forma Pauperis (Dkt. 6) is DENIED. Plaintiff must submit an amended complaint that states a cause of action and pay the filing fee in full within 30 days after entry of this Order and be prepared to pay for service of process upon Defendants if he desires to proceed.

DATED: March 2, 2023

David C. Nye
Chief U.S. District Court Judge